UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JADE DUET | CIVIL ACTION |
| VERSUS | NO: 12-3025 |
| AMERICAN COMMERCIAL LINES LLC, ET AL. | SECTION: "H"(5) |

### ORDER AND REASONS

Before the Court is a Motion to Remand. (R. Doc. 7.) For the following reasons, the Motion is DENIED. Plaintiff is not a Jones Act seaman and therefore his Jones Act claim against Defendant St. James Marine, Inc. ("St. James") was fraudulently pleaded. Accordingly, removal was proper.

### BACKGROUND

This maritime personal injury case arises from an accident that occurred on May 14, 2012, while Plaintiff was working aboard the NM 1035—a vessel owned by Defendant American Commercial Lines, LLC ("ACL"). Defendant ACL Transportation Services, LLC ("ACLTS") owns and

1

operates a barge repair facility (the "Armant Fleet") located on the Westbank of the Mississippi River in Vacherie, Louisiana. The Armant Fleet extends approximately one to two miles along the river. Part of the Armant Fleet consists of a number of barges tied together and moored to the riverbank in order to create a stationary work platform (the "floating dock"). The floating dock has not moved since originally moored and has no mode of propulsion.

ACLTS provides various fleeting and repair services for barges owned by its sister company, ACL. The ACL barges serviced by ACLTS remain in the river but are moored to the Armant Fleet. In order to help service these barges, ACLTS owns and operates several smaller push boats (the "Fleet Boats"). The Fleet Boats help move barges in and out of the Armant Fleet and shift barges within the Armant Fleet itself. The Fleet Boats operate twenty-four hours per day and each has three permanent crews. The crews consist of a captain and two deckhands. Each crew works twelve-hour shifts for fourteen days, and then is off for seven days.

ACLTS also employs fleet workers and repairmen. In addition to ensuring that the floating dock is properly maintained, the fleet workers assist the Fleet Boat crews in assembling barges into tows to be moved out of the Armant Fleet. The primary responsibility of the repairmen is the maintenance and repair of ACLTS equipment and ACL barges moored within the confines of the Armant Fleet. The repairmen are paid an hourly wage and work Monday through Friday, typically for eight hours per day.

ACLTS contracted with St. James to provide workers to clean ACL's barges and repairmen

2

to service ACLTS' mechanical equipment and ACL's barges. Pursuant to this contract, St. James—Plaintiff's payroll employer—assigned Plaintiff to work as a mechanic at the Armant Fleet under ACLTS supervision. Plaintiff slept at home and drove to and from the ACLTS facility each day. He was not permanently assigned to a vessel. Rather, he performed mechanical and welding work on both the Fleet Boats and ACL barges. The majority of Plaintiff's work on the Fleet Boats occurred while the vessels were moored to the floating dock. In order to access ACL barges moored at more remote locations within the Armant Fleet, Plaintiff was transported by Fleet Boat. The frequency with which Plaintiff traveled by Fleet Boat varied from day to day.

While Plaintiff's employment with St. James and ACLTS mainly involved repair and maintenance, Plaintiff would occasionally perform other types of work. Plaintiff worked as a deckhand when, for example, he helped reposition barges at the floating dock in order to facilitate a repair. Plaintiff worked in this capacity once or twice a month and only in connection with his duties as a mechanic. Plaintiff also assured that vessels complied with Coast Guard regulations by performing air quality control inspection and painting draft numbers on the exterior of the vessels.

Plaintiff worked exclusively within the confines of the Armant Fleet save for two occasions. On one occasion, Plaintiff left the fleet to help save a sinking vessel. On the other, Plaintiff traveled on a "sea-trial" to confirm that a vessel he repaired was in operable condition.

On May 14, 2012, Plaintiff was injured while working aboard the NM 1035 when he allegedly fell into an open manhole. He filed suit in State court under the Savings to Suitors Clause

3

on November 26, 2012.  ACL and ACLTS (collectively the "Removing Parties") removed the matter on December 21, 2012, invoking this Court's diversity jurisdiction and alleging improper joinder of St. James.  (R. Doc. 1.)  Plaintiff filed a Motion to Remand on January 8, 2013 (R. Doc. 7), which Removing Parties opposed on February 5, 2013 (R. Doc. 13).  Plaintiff filed a reply on February 7, 2013 (R. Doc. 20), and Removing Parties filed a sur-reply on February 14, 2013 (R. Doc. 24).  The Court heard oral argument on March 13, 2013, and took the Motion under advisement.  (R. Doc. 26.)

## LEGAL STANDARD

On a motion to remand, the removing party bears the burden of demonstrating that removal was proper. *Barker v. Hercules Offshore, Inc.*, No. 12–20150, 2013 WL 1319355, at *2 (5th Cir. 2013) (citations omitted).  The Jones Act, 46 U.S.C. § 30104, expressly incorporates the general provisions of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51. *Beech v. Hercules Drilling Co., L.L.C.*, 691 F.3d 566, 570 (5th Cir. 2012).  Since FELA cases may not be removed to federal court, Jones Act cases are generally non-removable as well.  *See* 28 U.S.C. 1445(a); *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 356 (5th Cir. 1999) (citations omitted).  "A fraudulently pleaded Jones Act claim does not, however, bar removal." *Holmes v. Atl. Sounding Co., Inc.*, 437 F.3d 441, 445 (5th Cir. 2006) (citing *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995)).  District courts may pierce the pleadings and utilize a summary judgment-like procedure to determine whether a

4

plaintiff has fraudulently pleaded a Jones Act claim.  *Holmes*, 437 F.3d at 445 (citations omitted). A court may only deny remand where, after "resolving all disputed facts and ambiguities in current substantive law in the plaintiff's favor, the court determines that the plaintiff has no reasonable possibility of establishing a Jones Act claim on the merits."  *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346–47 (5th Cir. 1999) (citing *Burchett*, 48 F.3d at 176).

**LAW AND ANALYSIS**

Removing Defendants contend that Plaintiff is not a Jones Act seaman and therefore cannot assert a Jones Act claim against St. James.  Plaintiff insists he is a Jones Act seaman.  Consequently, Plaintiff argues the instant matter must be remanded to State court.  For the following reasons, the Court agrees with Removing Defendants.  Since Plaintiff's Jones Act claim was fraudulently pleaded, removal was proper.

I.      <u>Whether Plaintiff is a Jones Act Seaman</u>

The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law . . . against the employer."  46 U.S.C. § 30104.  Congress did not define the term "seaman."  Thus, federal courts have undertaken the difficult task of defining the special class of maritime workers entitled to the protections of the Jones Act.  *Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 298 (5th Cir. 2008).  To help navigate these murky waters, the Supreme Court has developed a two-prong test.  First, a plaintiff must show that his duties "contribut[e] to

5

the function of the vessel or to the accomplishment of its mission." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995) (alterations in original) (internal quotations and citations omitted).  Second, a plaintiff must "demonstrate a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."  *Id.*  "The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question away from the jury."  *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554 (1997).  Nonetheless, "judgment as a matter of law is mandated where the facts and the law will reasonably support only one conclusion."  *Becker v. Tidewater, Inc.*, 335 F.3d 376, 386 (5th Cir. 2003).

A.  *Whether Plaintiff Satisfies the First Prong of* Chandris

"The Supreme Court in *Chandris* admitted that satisfying the first prong of the test is relatively easy: the claimant need only show that he 'do[es] the ship's work.'"  *Id.* at 387–88 (alterations in original) (quoting *Chandris*, 515  U.S. at 368).  Indeed, "this threshold requirement is very broad" and encompasses "[a]ll who work at sea in the service of a ship." *Chandris*, 515 U.S. at 368 (internal quotations and citations omitted).  Removing Defendants do not dispute that Plaintiff satisfies this requirement.

B.  *Whether Plaintiff Satisfies the Second Prong of* Chandris

The purpose of this prong is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those . . . whose employment does not regularly expose them to the  perils of the sea."  *Id.* (citations omitted).  The Court explained in *Papai* that "[f]or the

6

substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." 520 U.S. at 555. The Fifth Circuit has held that the *Papai* Court did not intend to imply that an employee's duties must literally take him to sea. *In re Endeavor Marine*, 234 F.3d 287, 291 (5th Cir. 2000) (per curiam). Rather, the "going to sea" passage is merely "a shorthand way of saying that the employee's connection to the vessel [must] regularly expose[] him to the perils of the sea." *Id.* (internal quotations and citations omitted).

The *Chandris* Court emphasized that "this second prong constitutes a 'status based' standard—*i.e.*, 'it is not the employee's particular job that is determinative [of seaman status], but the employee's connection to a vessel.'" *Becker*, 335 F.3d at 388 (alterations in original) (quoting *Chandris*, 515 U.S. at 388). Thus, seaman status cannot be resolved simply by examining the situs of an injury or the particular work the injured employee was performing at the time he was injured. *Saienni v. Capital Marine Supply, Inc.*, No. Civ.A. 03–2509, 2005 WL 940558, at *6 (E.D. La. Apr. 18, 2005) (citations omitted). Rather, "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon." *Chandris*, 515 U.S. at 370 (internal quotations and citations omitted).

The second prong of the seaman test is conjuctive: an injured worker's connection to a vessel or identifiable group of vessels must be substantial in both duration and nature. *Roberts v. Cardinal Servs. Inc.*, 266 F.3d 368, 374 (5th Cir. 2001) (citing *Chandris*, 515 U.S. at 371). The Court

7

examines each requirement separately.

    i. *Whether Plaintiff's Connection with the Armant Fleet Was Substantial in Duration*

The *Chandris* Court adopted the Fifth Circuit's rule of thumb that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."  515 U.S. at 371.  The Fifth Circuit has held that this "30 percent floor does not change when an 'identifiable group' of vessels in navigation is at issue, rather than just one vessel."  *Roberts*, 266 F.3d at 375.  For purposes of determining seaman status, an "identifiable group of vessels" is one that is subject to common ownership or control.  *Papai*, 520 U.S. at 557.

Removing Defendants contend that Plaintiff cannot satisfy this durational component, because the floating dock—comprised of vessels permanently moored to the riverbank with no means of propulsion—is not a "vessel" under the relevant jurisprudence.  *See generally Stewart v. Dutra Constr. Co.,* 543 U.S. 481 (2005); *Lozman v. City of Riviera Beach, Florida*, 133 S. Ct. 735 (2013).  Additionally, they argue that Plaintiff spent less than five percent of his time riding aboard the Fleet Boats.

The Court need not address these arguments, because Plaintiff satisfies the durational component with respect to the ACL barges.  The threshold issue is whether such barges are "in navigation."  The *Chandris* Court held that vessels temporarily moored and undergoing repairs are "still considered to be 'in navigation' whereas ships being transformed through 'major' overhauls

or renovations are not." *Chandris*, 515 U.S. at 374 (citations omitted). Since the record is devoid of evidence that the ACL barges which Plaintiff serviced were undergoing major overhauls and that Plaintiff spent less than thirty percent of his working hours servicing those barges, the durational component is met.

    ii. *Whether Plaintiff's Relationship with the Armant Fleet Was Substantial in Nature*

That Plaintiff spent more than thirty percent of his time in service of vessels is navigation does not by itself raise a triable factual issue regarding seaman status. As is often the case, the dispositive issue here is whether Plaintiff's connection to the Armant Fleet is substantial in *nature*. As discussed *supra*, this inquiry turns on whether Plaintiff was regularly exposed to the perils of the sea. For the following reasons, the Court answers this inquiry in the negative. Consequently, Plaintiff is not a Jones Act seaman.

Plaintiff argues that he was subjected daily to the perils of the sea. In support of this argument, Plaintiff notes that he was required to wear a life preserver at all times and contends that he faced hazard such as: (1) the dangers associated with the movement of vessels in water due to wind gusts and river turbulence; (2) trip-and fall hazards caused by the icing of barge surfaces in the winter; (3) inclement weather; and (4) the dangers of "long step[ping]" from barge to barge within the Armant Fleet. (R. Doc. 20.) At least two courts, one of which sits in this District, have held that such hazards are more typical of those faced by longshoremen and therefore do not constitute the kind of special hazards and disadvantages commonly faced by seamen. *See Leblanc*

9

*v. AEP Elmwood, LLC*, No. 2:11–cv–01668, 2012 WL 669416, at *5 (E.D. La. Feb. 29, 2012); *Denson v. Ingram Barge Co.*, No: 5:07–cv–00084–R, 2009 WL 1033817, at *3 (W.D. Ky. Apr. 16, 2009). Such special hazards and disadvantages include the need to need to fight fires without outside assistance, the need to abandon ship, the need to survive exposure to inclement weather until help arrives, potential delay or inconvenience in being transported offsite to receive medical attention, and being stuck on a vessel under the control of its Master and operator for extended periods of time until the next port call. *Lara v. Arctic King Ltd.*, 178 F. Supp. 2d 1178, 1182 (W.D. Wash. 2001); *Denson*, 2009 WL 1033817 at *3; *accord Leblanc*, 2012 WL 669416 at *5. Based on the record before it, the Court concludes that a reasonable jury could not find that Plaintiff was exposed to the perils of the sea on a regular basis.

Neither of the cases cited by Plaintiff compels a different conclusion. The totality of the circumstances surrounding Plaintiff's employment in this case are distinguishable from those in *In re Endeavor Marine*. In this per curiam decision, the Fifth Circuit held that a crane operator was a Jones Act seaman even though he did not literally go to sea in the course of his employment. *In re Endeavor Marine*, 234 F.3d at 292. In reaching this decision, the Court emphasized that the plaintiff was permanently assigned to the vessel in question, spent approximately eighteen months onboard the vessel, and was primarily responsible for operating cranes on board a vessel whose sole purpose was to load and unload cargo vessels. *Id.* In the case *sub judice*, Plaintiff never operated a crane, was not permanently assigned to any vessel in the Armant Fleet, and went home

10

every night after work.

At oral argument, Plaintiff cited *Naquin v. Elevating Boats, LLC* in support of his position, despite failing to discuss that case in his written memoranda. 842 F. Supp. 2d 1008 (E.D. La. 2008). The plaintiff in *Naquin* was employed as a "repair supervisor" and oversaw the repair of lift boats and cranes. *Id.* at 1011. In this capacity, the plaintiff often worked aboard vessels, which were usually jacked up or moored to a dock. *Id.* Vessels occasionally needed to be repositioned at the dock in order to facilitate a repair. *Id.* The plaintiff was onboard these vessels as they were moved approximately two to three times per week. *Id.* During these repositionings, the plaintiff typically handled the ship's lines and tied the vessel off to secure it. *Id.* In addition to working as a repair supervisor, the plaintiff assisted the vessels' deckhands while the vessels were offshore and was responsible for handling Coast Guard vessel inspections. *Id.* The plaintiff also operated a crane aboard a vessel in navigation for a three-year period. *Id.* Each hitch lasted three to seven days and required the plaintiff to sleep onboard the ship. Finally, the plaintiff testified that he went to sea several times, with each trip lasting no more than five total days at sea. *Id.* at 1011–12.

*Naquin* is readily distinguishable from the instant matter. The plaintiff in *Naquin* routinely assisted in moving ships and mooring barges, had a wider range of job responsibilities than Plaintiff, and spent more time at sea.

In sum, after reviewing the record in a light most favorable to Plaintiff, the Court finds Plaintiff cannot establish seaman status as a matter of law. Given the foregoing, a reasonable jury

could not conclude that Plaintiff is a "sea-based maritime employee[] whose work regularly exposes [him] to 'the special hazards and disadvantages to which they who go down to sea in ships are subjected.'" *Chandris*, 515 U.S. at 370 (quoting *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, (1946) (Stone, C.J., dissenting)).

II. <u>Whether Removal Was Proper</u>

Having concluded that Plaintiff is not a Jones Act seaman, the Jones Act does not bar removal. Moreover, although general maritime claims under 28 U.S.C. § 1333 do not constitute federal questions for purposes of removal jurisdiction, such claims may be removed on the basis of diversity of citizenship. *See In re Eckstein Marine Service, L.L.C.*, 672 F.3d 310, 315 (5th Cir. 2012). Accordingly, removal was proper.

**CONCLUSION**

For the reasons previously stated, the Motion to Remand is DENIED.

New Orleans, Louisiana, this 16th day of April, 2013.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

12